**UNITED STATES of America, ex rel. Leonard J. VRANIAK, Petitioner,**

**v.**

**Ross V. RANDOLPH, Warden, Illinois State Penitentiary, Menard Branch, Menard, Illinois, Respondent.**

**Misc. No. 149–D.**

United States District Court
E. D. Illinois.

May 5, 1958.

John A. Lambright, Danville, Ill., for petitioner.

Fred G. Leach, Asst. Atty. Gen., Benjamin I. Norwood, Jr., Asst. Atty. Gen., Latham Castle, Atty. Gen., for respondent.

PLATT, Chief Judge.

Leonard J. Vraniak, an inmate of the Illinois State Penitentiary at Menard, Illinois, presents an amended petition for writ of habeas corpus in which he challenges the constitutionality of the following Illinois statute under which he was convicted and sentenced:

"Whoever conveys into the penitentiary, or into any jail or other place of confinement, any disguise, instrument, tool, weapon or other thing adapted or useful to aid a prisoner in making his escape, with intent to facilitate the escape of any prisoner there lawfully committed or detained, or by any means whatever aids, abets, or assists such prisoner to escape or to attempt to escape from any jail, prison, or any lawful detention whether such escape is effected or attempted or not, or conceals or assists any convict after he had escaped, shall upon conviction thereof be given the same penalty as the prisoner whom he aided or abetted, except that in case the prisoner is sentenced to death, the penalty for such aid shall be imprisonment for life in the penitentiary." Ill.Rev.Stat. (1957), ch. 38, § 228.

Ross v. Randolph, Warden at the Illinois State Penitentiary at Menard, Illinois, by Latham Castle, Attorney General of the State of Illinois, filed an amended return in accordance with the order of this court. The return in substance denied that the relator's constitutional rights have been violated and prayed that the petition be dismissed. Therefore, all facts properly alleged in the petition must be considered as true.

The petition discloses that the relator was sentenced to a term of ten years for habitual larceny by the Cook County Criminal Court on July 29, 1948. While confined in the County Jail awaiting transportation to the penitentiary he engaged in an unlawful attempt to escape on November 28, 1948. Vraniak, Robert Silz, Dominick Albano, Edwin Boyle, Alexander Micele, Nickolas LaCoco, Clarence Hawkins, Robert Lagenour, and Andrew T. Evans were all involved in the attempted escape. Silz was being detained in jail because he had allegedly violated his parole; Albano was awaiting trial on an indictment for armed robbery; Boyle was confined in the jail awaiting trial on an indictment alleging assault with intent to murder; LaCoco was awaiting transportation to the penitentiary to serve a sentence of not less than forty years nor more than fifty years on the charge of burglary; Micele had been convicted of armed robbery and had been sentenced for not less than ten years nor more than twenty years; Hawkins was awaiting transportation to a state institution to serve a sentence of not less than five nor more than ten years for assault with intent to kill; Lagenour had been sentenced to serve not less than five nor more than ten years for larceny and five to ten years for assault with intent to kill; Evans had been sentenced to not less than three nor more than ten years for larceny of an automobile. Vraniak, Silz, Albano, Boyle, Micele, Hawkins, and Lagenour were thereafter indicted for having "wilfully and knowingly aided, abetted and assisted * * * Nickolas LaCoco * * * to attempt to escape from said * * * Jail," in violation of said § 228. Vraniak, Micele, Hawkins, Lagenour and Albano were tried and found guilty of aiding LaCoco in an attempt to escape. LaCoco and Silz entered a plea of guilty to the charge of aiding Evans in an attempt to escape, and each received a sentence of seven to twelve years to run concurrently with the sentence already imposed. Boyle was not tried and Evans was killed during the attempted jail break. Vraniak was sentenced to a term of not less than six nor more than ten years, to run consecutively to the sentence which had already been imposed upon him. Vraniak started serving this sentence on September 15, 1956 after the expiration of his prior sentence.

Relator alleges that he has exhausted all available state remedies as required by 28 U.S.C.A. § 2254. The re-

turn does not deny this allegation. A post conviction petition pursuant to Illinois Revised Statutes (1957) ch. 38, §§ 826–832, was denied by the Cook County Criminal Court on May 13, 1953, followed by denial of a writ of error thereon to the Illinois Supreme Court on September 25, 1953. A writ of certiorari to the United States Supreme Court was denied on February 1, 1954. Vraniak v. State of Illinois, 347 U.S. 907, 74 S.Ct. 434, 98 L.Ed. 1065. In this petition under the Post Conviction Act Vraniak raised the question of constitutionality of this statute. On the common law record a writ of error was denied by the Illinois Supreme Court in People v. Vraniak, 5 Ill.2d 384, 125 N.E.2d 513. February 16, 1955, and after rehearing was denied, writ of certiorari by the United States Supreme Court was denied on June 6, 1955. In Illinois the constitutionality of a statute cannot be raised in a petition for writ of habeas corpus. People ex rel. Harris v. Graves, 276 Ill. 350, 114 N.E. 556. Therefore, this court finds that the relator has satisfactorily exhausted all available state remedies.

Vraniak contends that said § 228 violates both the due process clause and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Section 1 of the Fourteenth Amendment provides, in part, that:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

▮▮▮ Relator contends that § 228 violates the due process clause for two reasons. In the first place he argues that the Illinois Supreme Court in People v. Vraniak, 5 Ill.2d 384, 125 N.E.2d 513, certiorari denied 349 U.S. 963, 75 S.Ct. 895, 99 L.Ed. 1285, ruled that criminal intent is not a necessary element of the offense of aiding a prisoner to escape or attempt to escape. He contends that without criminal intent the statute does not separate innocent from criminal acts, and men of ordinary intelligence must guess at its meaning and differ as to its application; thus the statute is vague and uncertain. In People v. Vraniak, supra, 5 Ill.2d at page 390, 125 N.E.2d at page 517, the court interpreted said § 228 as defining a crime which could be committed in any one of three ways:

"(1) by conveying an instrument into a place of confinement with the intent to facilitate a prisoner's escape; (2) by aiding a prisoner to escape or attempt to escape; or (3) by concealing or assisting a prisoner after he has so escaped."

In that case Vraniak argued that the indictment failed to allege the element of intent, and the court stated at page 390 of 5 Ill.2d, at page 517 of 125 N.E.2d:

"Since the defendant was here indicted and tried for 'aiding, abetting, and assisting' in an attempted escape, intent was not a material element of the crime and need not have been alleged."

It is difficult to understand why the court discussed this argument made by Vraniak inasmuch as he was indicted for "unlawfully, feloniously, wilfully and knowingly" aiding an attempt to escape. Willfully in itself means intentionally, and the Supreme Court of Illinois must have had the common law record before it, including the indictment. The Illinois court from its definition of the three ways in which the crime could be committed indicated that intent was a necessary element of the crime when an instrument was conveyed into a place of confinement. Since intent was not mentioned in the second or third clause of the statute that court held it need not be alleged in an indictment therefor. The court did not hold that aiding an escape or attempt to escape was mala prohibita, nor that a person could be prosecuted for innocent or merely negligent acts. That question was not before it, nor would such an interpretation of the statute be logical. A statute should not be construed to make it repugnant to constitu-

tionality where there is an alternative interpretation which is constitutional. United States v. Standard Brewery, 251 U.S. 210, 220, 40 S.Ct. 139, 64 L.Ed. 229, 235. Also this court need not consider the application of the statute to a person who innocently aids a prisoner to escape, or who conceals or assists a prisoner after he has so escaped. The relator was properly charged in the indictment with aiding a prisoner to attempt to escape, and was found guilty after a jury trial. He was not charged with concealing or assisting a prisoner after he had escaped. Vraniak would indeed find it difficult to maintain that he innocently aided a prisoner to escape in view of the fact that he alleged in his petition that he participated in the escape plot. It must be concluded that § 228 is neither vague, nor does it violate the due process clause in not requiring intent to be alleged in the indictment.

 Relator contends, secondly, that since it was not a crime to escape from a county jail in 1948 the Act is unconstitutional because it permits the doing of an act without fear of punishment while punishing those who aid or assist that class. This contention was aptly met in People v. Vraniak, supra, wherein the court held that the statute was not unconstitutional because it punished only the aider and not the escaper, and said at pages 390, 391 of 5 Ill.2d, at page 517 of 125 N.E.2d:

"By the statute under which defendant was charged, the legislature saw fit to provide punishment for the person aiding an escape, but not the one aided. When it is considered that the danger of escape is considerably increased by outside intervention or internal collusion by persons other than the prisoner, thus rendering inadequate protective measures which would otherwise be sufficient, we think it only natural and reasonable that the legislature made the classification it did in seeking to combat the increased dangers of escape. There being a substantial rather than a fancied difference between the policy to be subserved in punishing those aiding an escape, as distinguished from those who were aided, we must conclude that the classification is neither arbitrary, discriminatory nor unreasonable."

This holding not alone answers Vraniak's second contention but also indicates that the court required guilty knowledge and negatives the violation by negligent or innocent acts.

This brings forward Vraniak's contention that the statute violates the equal protection clause of the Fourteenth Amendment. In People v. Nicholson, 401 Ill. 546, 82 N.E.2d 656, 660, it was stated:

" 'Equal protection of the law requires that the rights of every person must be governed by the same rule of law under similar circumstances, and a mere arbitrary discrimination between different classes is a denial of the equal protection of the law.' (Citing cases.) It is within the power of the legislature to provide one penalty for all prisoners who aid one convicted of robbery to escape, and to provide another penalty for all prisoners aiding one convicted of petty larceny to escape. This is not an arbitrary discrimination. The measure of punishment is fixed by the terms of this statute, in accordance with the seriousness of the offense of which the prisoner, who is released or sought to be released from prison, is convicted."

 Thus the Illinois Supreme Court has held that § 228 does not deny the equal protection of the laws. Though not binding upon this court, the state court decisions are persuasive. Goesaert v. Cleary, D.C., 74 F.Supp. 735, 739, affirmed 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163. This court does not disagree with the result nor the reasoning in the Illinois decision.

 Section 228 was held unconstitutional by Judge Barnes in a lengthy unreported opinion in United States ex rel. Touhy v. Ragen, (N.D.Ill., Aug. 9,

1954, No. 48 C 448), reversed on other grounds 7 Cir., 224 F.2d 611. Judge Barnes held, (Record at p. 759), that:

"The legislature has not made any fixed and reasonable classification under the statute. Each and every offense, when it is committed, under the statute becomes a new class which never existed before and will never exist again. The classification is unreasonable and arbitrary. The character or nature of the offense committed is not the basis upon which the extent of the punishment is fixed. The measure of the punishment of the violator of the statute is not something that the violator himself did but is something that another person did * * *."

In reversing on the sole ground that the relator had failed to exhaust state remedies, in United States ex rel. Touhy v. Ragen, supra, the court of appeals expressly refused to consider the constitutional question. However, Chief Judge Duffy, speaking for the majority, commented, 224 F.2d at page 617, that:

"the authors of this legislation might well be surprised to learn that when several prison inmates make a common escape, they can be prosecuted on the theory that they assisted each other. Also, it shocks the conscience when one considers that under the terms of this Act, one escaping prisoner can be sentenced to 199 years while another of the same group may be sentenced to a year or two. We feel that certain of its provisions are not in accord with enlightened concepts of penology."

This court is in full accord with the above statement. However, neither severity of punishment nor an unwise legislative enactment render a statute unconstitutional. See Nebbia v. People of State of New York, 291 U.S. 502, 537, 54 S.Ct. 505, 78 L.Ed. 940; Williamson v. Lee Optical of Okl., 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563, rehearing denied 349 U.S. 925, 75 S.Ct. 657, 99 L. Ed. 1256; Harris v. United States, 10 Cir., 190 F.2d 503.

In reaching his decision Judge Barnes considered that the statute provided a mandatory punishment equal to the length of the sentence received by the aided convict, although he did not rest his holding thereon. The wording of the statute easily lends itself to such an interpretation. In People v. Nicholson, supra, the court held that the sentence to be imposed for the violation of § 228 was discretionary so long as it was within the minimum and maximum provided for the crime for which the escaper had been convicted. The court there referred to the word penalty in said § 228 and differentiated penalty from the actual punishment or sentence. This discretion was extended to aiding an escaper convicted and sentenced for a definite term. People v. Touhy, 9 Ill.2d 462, 138 N.E.2d 513, (in which case the constitutionality of said § 228 was again raised as in the instant case.) The appeal was "dismissed for want of a substantial federal question," by the United States Supreme Court in 353 U.S. 962, 77 S.Ct. 1051, 1 L.Ed.2d 913, rehearing denied 354 U.S. 943, 77 S.Ct. 1404, 1 L.Ed.2d 1541. The Illinois Supreme Court therefore has construed § 228 to mean that the aider shall upon conviction thereof be subject to the same penalty to which the prisoner whom he aided or abetted was subject. This clearly demonstrates that it is not mandatory that the aider shall receive the same sentence as the escaper. This court is bound by the construction given the said § 228 by the Supreme Court of Illinois. State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744; United States ex rel. Touhy v. Ragen, 7 Cir., 224 F.2d 611, 617, certiorari denied 350 U.S. 983, 76 S.Ct. 470, 100 L.Ed. 851; United States ex rel. Scott v. Babb, 7 Cir., 199 F.2d 804, certiorari denied 344 U.S. 935, 73 S.Ct. 507, 97 L.Ed. 720; United States ex rel. Holderfield v. Ragen, 7 Cir., 170 F.2d 189, certiorari denied 336 U.S. 906, 69 S.Ct. 485, 93 L.Ed. 1071; Bevins

v. Prindable, D.C., 39 F.Supp. 708, affirmed 314 U.S. 573, 62 S.Ct. 116, 86 L.Ed. 465. The Nicholson case was decided by the Illinois Supreme Court in 1948, and the Vraniak and Touhy cases, supra, were decided by the same court subsequent to Judge Barnes's opinion.

Judge Barnes also placed considerable weight upon his own interpretation as to the manner in which the crime defined under said section might be committed. In the instant case the court is confined to the interpretation as defined in People v. Vraniak, supra, and is confronted only with the commission of the act by aiding the prisoner to escape or attempt to escape.

 Section 228 must be viewed not as creating different classes of crime, but only one crime; namely, aiding escape, with varying degrees of aggravation depending upon whom the aider assists. While the court has great respect for Judge Barnes, it does not agree that each and every offense when committed becomes a new class, nor that the character of the offense committed is not the basis upon which the extent of punishment is fixed. The degree of aggravation of the offense is the basis upon which the extent of the punishment is determined. This does not constitute an unreasonable classification, nor does the state impose different punishment upon one person or class of persons than is imposed upon other persons similarly situated for like offenses.

This view is similar to the ruling of the Oregon Supreme Court in Kelley v. Meyers, 1928, 124 Or. 322, 263 P. 903, one of the few reported cases dealing with a statute on aiding escape, Or.L. § 2034 et seq. The second clause of the statute there in question imposed the same punishment upon the aider as that provided for the crime with which the person whose escape was intended or effected was charged or convicted, excepting crimes punishable with death or life imprisonment. It was contended that the statute imposed cruel and unusual punishment. That court stated, 124 Or. at page 906, 263 P. at page 906:

"[The Legislature] had as much power to impose a penalty for assisting a prisoner to escape as it had to impose a penalty for the particular crime with which such prisoner was charged, and to make the penalty the same in both instances or * * * different * * * as, in its discretion, it should see fit. It is a more serious crime and one far more dangerous to the public to effect the escape of a prisoner who is charged with or * * * convicted of highway robbery than of one who has been merely charged or convicted of a misdemeanor. *While it is true that the crime of assisting a prisoner to escape, regardless of the gravity of the offense with which the prisoner is charged, may be committed by the same identical means, there is a difference in the enormity of the offense, depending upon the atrocity of the crime with which the prisoner is charged, and a recognition by the Legislature of this difference in prescribing a different punishment * * * is not arbitrary * * ** hence the classification in the penalties * * * does not contravene any of the requirements of the Constitution." (Emphasis supplied.)

It is to be noted that the Oregon Supreme Court does not differentiate between penalty and punishment as the Illinois Supreme Court has, but holds that while aiding escapes may be committed by the same means they have various degrees of seriousness.

 Relator for the first time contends that since his attorney at Danville, Illinois, in this proceeding, is not permitted to communicate with him by mail, without the censorship of the letters by the prison authorities, he is denied due process. The censoring of mail is a prison rule. The court will not interfere with such rules which are so necessary in the orderly conduct of an institution. See Ortega v. Ragen, 7 Cir., 216 F.2d 561, certiorari denied 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268; Adams

v. Ellis, 5 Cir., 197 F.2d 483; Gerrish v. State of Maine, D.C., 89 F.Supp. 244; Green v. State of Maine, D.C., 113 F. Supp. 253. It is difficult to understand how this is pertinent to the present petition, nor can it be considered a denial of due process.

The court expresses its appreciation for the services of Mr. John A. Lambright in representing relator in this proceeding.

Petition for writ of habeas corpus is denied, and the action is dismissed. It is so ordered.